IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

INRE:

ROBIN R. LUTES,                                      Bankruptcy No. 23-20120-CMB

          Debtor.

                                                 Chapter 13

ROBIN R. LUTES,

          Movant,

         v.                                          Related to Doc. No. 51

ROBIN R. LUTES,

         Respondent.

**<u>RESPONSE OF COUNSEL TO DEBTOR'S
MOTION FOR EMERGENCY STATUS CONFERENCE</u>**

AND NOW comes Lawrence W. Willis, Esq., counsel for the Debtor, and respectfully responds to
the Debtor's Motion for Emergency Status Conference as follows:

1.  Counsel is sympathetic to the significant challenges experienced by the Debtor during the
    pendency of this case, including serious medical issues, a motor vehicle accident, and
    resulting financial difficulties.

2.  Counsel does not dispute that the Debtor faced genuine challenges during the
    administration of this Chapter 13 case.

3.  The record reflects that those challenges were addressed through multiple plan
    modifications, communications with the Debtor, the Chapter 13 Trustee, and the Office of
    the United States Trustee, and Orders entered by the Court during the administration of the
    case.

4.  The Debtor filed this Chapter 13 case on January 21, 2023. The original Chapter 13 Plan
    was filed on February 19, 2023 and confirmed on March 21, 2023 at Docket No. 24.

5.  The confirmed plan required monthly payments of approximately $2,200.00 and provided
    for payment of secured creditors, mortgage arrears, tax obligations, administrative
    expenses, attorney compensation, trustee commissions, and distributions to unsecured
    creditors.

6.  During administration of the case, counsel addressed mortgage payment changes and plan
    administration issues, including filings relating to mortgage payment changes and
    treatment of secured claims.

7.  On November 12, 2024, counsel filed an Amended Chapter 13 Plan at Docket No. 30. The
    modification was filed to address a Mortgage Payment Change filed by Rocket Mortgage
    effective December 1, 2024 and to modify the treatment of Santander Consumer USA

(Chrysler Capital) by providing for payment in full of the secured claim. The modification was not filed in response to a payment default.

8. The Amended Plan was confirmed on January 10, 2025 at Docket No. 33, and a Stipulated Order Modifying Plan was thereafter entered on January 15, 2025 at Docket No. 36.

9. Pursuant to those modifications, the Debtor's monthly payment increased from $2,200.00 to $2,263.00 beginning January 2025.

10. At filing, the Debtor scheduled approximately $168,919.00 in secured debt, $15,010.00 in priority debt, and $266,024.00 in unsecured debt, for total scheduled liabilities of approximately $449,953.00.

11. Despite scheduling approximately $266,024.00 in unsecured debt, the confirmed Chapter 13 Plan estimated that only $5,105.00 would be available for distribution to nonpriority unsecured creditors, representing an estimated dividend of approximately 2.00%.

12. Thus, unsecured creditors holding claims totaling hundreds of thousands of dollars were projected to receive only a nominal dividend under the confirmed plan. The plan was not structured as a substantial repayment plan for unsecured creditors and did not require meaningful distributions to that creditor class.

13. Accordingly, the later extension of the plan term was not driven by any effort to increase the dividend paid to unsecured creditors. Rather, the extension became necessary only after the Debtor became delinquent in plan payments and the Trustee filed a Certificate of Default alleging arrears of $9,304.00.

14. Notably, the Trustee's asserted default of $9,304.00 exceeded the entire projected pool available to nonpriority unsecured creditors under the confirmed plan. This further demonstrates that the modification was intended to cure the payment delinquency and preserve the case, not to increase recoveries to unsecured creditors.

15. The Debtor received the benefits of Chapter 13 protection while the plan addressed these obligations, including preservation of her residence, payment of mortgage arrears, payment of secured claims, treatment of tax obligations, and distributions required under the confirmed plan.

16. The Debtor remained protected under Chapter 13 following the January 2025 modification. The payment default giving rise to the later plan extension did not occur until August 2025.

17. On August 7, 2025, the Chapter 13 Trustee filed a Certificate of Default at Docket No. 41 alleging that the Debtor was in material default under the confirmed plan, that the monthly plan payment was $2,263.00, and that the Debtor was $9,304.00 in arrears, including the August 2025 payment.

18. On August 8, 2025, the Court entered an Order at Docket No. 42 directing the Debtor to either contest the default or file a proposal to cure, an amended plan, or a stipulated modification within twenty-one (21) days in order to avoid dismissal of the case.

19. Following entry of the Certificate of Default and the Court's August 8, 2025 Order, the Debtor contacted counsel's office regarding the Trustee's allegations, the asserted delinquency, and the risk of dismissal of the Chapter 13 case.

20. On August 15, 2025, at approximately 11:30 a.m., the Debtor telephoned counsel's office regarding her bankruptcy case and was connected with counsel to discuss the Trustee's allegations and available options to avoid dismissal.

21. During those communications, counsel advised the Debtor that proof of recent plan payments would be required and that an amended Chapter 13 Plan would need to be filed in order to address the default and preserve the case.

22. On August 28, 2025, at 11:17 a.m., the Debtor emailed counsel proof of payment and advised: "As promised, the attached includes the payment that began processing yesterday through the TFS and PNC systems. Automatic payments are set to continue recurring on the 4th Wednesday of the month."

23. Counsel utilized the proof of payment provided by the Debtor in formulating a cure proposal and preparing the Amended Chapter 13 Plan.

24. Accordingly, counsel filed the Amended Chapter 13 Plan on August 29, 2025 at Docket No. 43.

25. At the time of the default, the practical alternatives were dismissal of the case, a substantial lump-sum cure, a significant increase in monthly plan payments, or modification of the confirmed plan.

26. Given the Debtor's financial circumstances and the challenges that contributed to the default, counsel determined that modification of the plan represented the most feasible means of curing the default while maintaining a payment amount the Debtor could reasonably afford.

27. The Amended Plan proposed a cure of the Trustee's asserted default by extending the plan term from thirty-six (36) months to forty-two (42) months while avoiding a substantial increase in the Debtor's monthly payment obligation.

28. Counsel determined that extending the plan term from thirty-six (36) months to forty-two (42) months was the most practical means of curing the default because a significant increase in the monthly payment would not have been feasible given the Debtor's financial circumstances.

29. The purpose of the modification was not to increase the Debtor's burden, but rather to preserve the protections of Chapter 13, avoid dismissal, and permit cure of the $9,304.00 default over time.

30. Following the modification, the Debtor's payment increased only modestly from $2,263.00 to $2,295.00 beginning November 2025.

31. The Amended Plan was served upon the Debtor and all parties in interest.

32. On October 16, 2025, the parties appeared for conciliation, at which time the Trustee reported that a proposed order would be submitted resolving the Certificate of Default.

33. Counsel thereafter filed the required Certification of Counsel.

34. On October 20, 2025, the Court entered its Order Confirming the Amended Chapter 13 Plan at Docket No. 46. The Trustee advised that the proposed order resolved the

Certificate of Default, and the Court approved the modified plan.

35. The Confirmation Order was served upon the Debtor following entry.

36. The Amended Plan and Confirmation Order clearly reflected the modified payment terms and extended duration of the plan.

37. The original thirty-six (36) month term expired in approximately January 2026. The Debtor thereafter continued making payments pursuant to the modified plan approved by the Court.

38. The Debtor did not object to the proposed modification, appeal the resulting Orders, or seek reconsideration of the January 10, 2025 Confirmation Order, the January 15, 2025 Stipulated Order Modifying Plan, or the October 20, 2025 Order Confirming the Amended Chapter 13 Plan.

39. On March 27, 2026, counsel emailed the Debtor and specifically advised: "You are currently in month 38 of a 42-month plan, with 4 months remaining."

40. On March 30, 2026, the Debtor responded by email acknowledging receipt of the information, asking questions regarding the remaining balance and Trustee funds on hand, and stating, "There is an end in sight." The Debtor did not raise any objection to the 42-month term at that time.

41. Although the Amended Plan extending the term was filed in August 2025 and confirmed in October 2025, the Debtor did not raise concerns regarding the extension until months later, after having received the Amended Plan, Confirmation Order, and March 2026 correspondence specifically identifying the case as a 42-month plan.

42. The modification process worked exactly as intended. The Trustee identified a default, counsel proposed a feasible modification, notice was provided, the Court approved the modification, and the Certificate of Default was resolved.

43. The extension benefited the Debtor. Absent the modification, the Trustee was actively seeking dismissal of the case. The modification preserved the Debtor's bankruptcy protection, allowed her to retain her residence, and provided a path toward completion of the case.

44. Following the Debtor's concerns regarding payoff figures, plan balances, attorney compensation, and completion calculations, counsel communicated with the Debtor, the Chapter 13 Trustee, and the Office of the United States Trustee, obtained updated payoff information, explained available completion options, and agreed to waive disputed additional fees in an effort to facilitate completion of the case.

45. Counsel's efforts in this case substantially exceeded the services contemplated by the standard Chapter 13 fee arrangement. Counsel devoted significant additional time to addressing plan modifications, mortgage payment changes, Trustee default proceedings, payoff inquiries, completion calculations, communications with the Debtor, and coordination with the Chapter 13 Trustee.

46. Despite having performed substantial additional work during the administration of the case, counsel elected to waive earned but unbilled fees in an effort to reduce any remaining dispute, facilitate completion of the case, and assist the Debtor in obtaining the benefits of

a successful Chapter 13 completion.

47. Rather than seeking additional compensation for the substantial post-confirmation services provided, counsel voluntarily attempted to resolve the Debtor's concerns through direct communications, explanation of plan calculations, consultation with the Chapter 13 Trustee, and cooperation with the Office of the United States Trustee.

48. After the Debtor raised concerns regarding administration of the case and contacted the Office of the United States Trustee, counsel cooperated fully with all inquiries, provided requested information, and continued efforts to resolve the issues raised by the Debtor.

49. At all times, counsel acted in good faith and with the objective of assisting the Debtor in successfully completing the Chapter 13 case and obtaining the benefits of the relief sought when the case was filed.

50. The issues raised by the Debtor concern historical plan administration, plan duration, payoff calculations, and accounting matters that have already been the subject of communications among the Debtor, counsel, the Trustee, and the Office of the United States Trustee.

51. The record reflects that the Debtor received the benefits of Chapter 13 protection, retained her residence, avoided dismissal of the case in 2025, and was provided a feasible means of curing the $9,304.00 default through a Court-approved modification.

52. Under these circumstances, no emergency exists requiring expedited intervention by the Court.

WHEREFORE, counsel respectfully requests that the Court deny the Debtor's Motion for Emergency Status Conference and grant such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ Lawrence W. Willis
Lawrence W. Willis, Esq.
PA 85299
Willis & Associates
201 Penn Center Blvd
Suite 310
Pittsburgh, PA 15235
412-235-1721
Email: ecf@westernpabankruptcy.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

INRE:

ROBIN R. LUTES,                                    Bankruptcy No. 23-20120-CMB

               Debtor.
                                                   Chapter 13
ROBIN R. LUTES,

               Movant,

        v.                                 Related to Doc. No. 51

ROBIN R. LUTES,

               Respondent.


CERTIFICATE OF SERVICE

I hereby certify that on this __29th__ day of _May_ , 2026, a true and correct copy of the foregoing Response of Counsel to Debtor's Motion for Emergency Status Conference was filed electronically through the Court's CM/ECF system, which constitutes service upon all registered CM/ECF users.

I further certify that a true and correct copy was served upon the following:

Robin R. Lutes
519 Greensburg Pike
West Newton, PA 15089
USPS Ground Advantage 2-Day Delivery
 9434630109355146148525

Office of the United States Trustee
Liberty Center, Suite 970
1001 Liberty Avenue
Pittsburgh, PA 15222

Ronda J. Winnecour, Esq.
Chapter 13 Trustee
P.O. Box 870
Memphis, TN 38101-0870

and all parties in interest entitled to notice.

/s/ Lawrence W. Willis
Lawrence W. Willis, Esq.
PA I.D. No. 85299
Willis & Associates
201 Penn Center Blvd., Suite 310

Pittsburgh, PA 15235
Counsel for Debtor